The STATE of Ohio, Appellee,

v.

RAZO, Appellant.

[Cite as *State v. Razo*, 157 Ohio App.3d 578, 2004-Ohio-3405.]

Court of Appeals of Ohio,
Ninth District, Lorain County.

No. 03CA008263.

Decided June 30, 2004.

Sherry Glass Rios, Lorain County Assistant Prosecuting Attorney, for appellee.

Harvey B. Brunner, for appellant.

---

BATCHELDER, Judge.

{¶ 1} Appellant, Ranulfo Razo, appeals from the judgment in the Lorain County Court of Common Pleas that found him guilty of rape. We affirm.

## I

{¶ 2} On March 20, 2002, the Lorain County Grand Jury indicted Razo on ten separate counts of rape, in violation of R.C. 2907.02(A)(1)(b); each count of rape carried a sexually violent predator specification. Razo had assigned trial counsel, as well as a second attorney whom the trial court judge had appointed to translate the proceedings into Spanish. The trial court judge found this second attorney to be fluent in Spanish to assist Razo in understanding the implications of entering a guilty plea. Razo withdrew his earlier entered plea of not guilty to the charges and entered a plea of guilty to every count contained in the indictment, and the state nolled the sexually violent predator specifications. The trial court found Razo guilty, classified him as a sexual predator, and sentenced him accordingly. Razo timely appeals and asserts two assignments of error for review. As Razo's assignments of error concern similar issues of law and fact, we will address them together.

## II

### First Assignment of Error

"The trial court abused its discretion by finding that [Razo's] lack of English proficiency did not impair his ability to understand the proceedings or communicate with the court."

### Second Assignment of Error

"The trial court abused its discretion by failing to provide [Razo] with a qualified interpreter in violation of his constitutional rights."

{¶ 3} In his first assignment of error, Razo avers that the trial court erred when it failed to appoint an independent interpreter to translate the proceedings into Spanish for Razo. Therefore, Razo avers that his constitutional rights, as contained in the Sixth and Fourteenth Amendments, were violated and that his guilty plea was not entered knowingly, intelligently, or voluntarily because he lacked the ability to understand the implications of entering a guilty plea without the assistance of an interpreter. Additionally, in his second assignment of error, Razo acknowledges that the second attorney is fluent in Spanish; however, he avers that his counsel was not a "qualified interpreter." Therefore, Razo avers that the trial court abused its discretion when it failed to appoint "the most qualified, reasonably available interpreter in order to protect [Razo's] constitutional rights." Razo's averments lack merit.

{¶ 4} "[I]n a criminal case the defendant is entitled to hear the proceedings in a language he can understand." *State v. Pina* (1975), 49 Ohio App.2d 394, 399, 3 O.O.3d 457, 361 N.E.2d 262. Nevertheless, the trial court has the discretion to determine whether the defendant requires an interpreter for assistance. *State v. Saah* (1990), 67 Ohio App.3d 86, 95, 585 N.E.2d 999; *State v. Quinones* (Oct. 14, 1982), 8th Dist. No. 44463, 1982 WL 5957. Accordingly, an appellate court will not disturb a decision of the trial court regarding the necessity of an interpreter absent an abuse of discretion. Id. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748. When applying the abuse-of-discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.

{¶ 5} Crim.R. 11(C) governs the trial court's acceptance of a guilty plea to a felony offense. Particularly, this rule provides:

"(2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:

"(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

"(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

"(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself." Crim.R. 11(C).

{¶ 6} In order to comply with this rule, the trial court must determine whether the defendant completely understands the ramifications of entering a plea of guilty. *State v. Duran–Nina* (Oct. 30, 1997), 8th Dist. Nos. 71159 and 71160, 1997 WL 675450. Accordingly, to determine his understanding, the trial court must engage in an oral dialogue with the defendant who is entering the plea. Id.; *State v. Caudill* (1976), 48 Ohio St.2d 342, 2 O.O.3d 467, 358 N.E.2d 601, paragraph two of the syllabus.

{¶ 7} Although the courts should strive to literally comply with Crim.R. 11, the Supreme Court of Ohio has articulated that "a trial court in accepting a plea of guilty, need only *substantially comply* with the mandates of Crim.R. 11(C)." (Emphasis added.) *Duran–Nina*, supra, citing *State v. Stewart* (1977), 51 Ohio St.2d 86, 92, 5 O.O.3d 52, 364 N.E.2d 1163; *State v. Nero* (1990), 56 Ohio St.3d 106, 107, 564 N.E.2d 474.

"Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving. Furthermore, a defendant who challenges his guilty plea on the basis that it was not knowingly, intelligently, and voluntarily made must show a prejudicial effect. The test is whether the plea would have otherwise been made." (Citations omitted.) *Nero*, 56 Ohio St.3d at 108, 564 N.E.2d 474.

{¶ 8} A review of the record in the present case reveals that Razo did not orally or by written motion request the trial court to appoint another interpreter to assist him during the course of the proceedings. Additionally, the record indicates that Razo's second counsel was fluent in Spanish, was present at the proceedings, and was able to provide "whatever explanation may be appropriate" in Spanish to Razo. Finally, the record demonstrates that at no time did Razo communicate to the court that he was confused or lacked understanding as

to the implications of entering a guilty plea or the rights he would be waiving. Rather, the colloquy between the trial court and Razo at the plea hearing illustrates that the trial court thoroughly addressed Razo, in accordance with Crim.R. 11(C), and that Razo did understand, as he affirmatively answered each question posed by the trial court without requesting an explanation. Thus, there is no evidence in the record that Razo did not enter his plea knowingly, intelligently, or voluntarily, or that he would not have entered the plea if the court had appointed an interpreter. See *Nero*, 56 Ohio St.3d at 108, 564 N.E.2d 474.

{¶ 9} We now turn to Razo's averment that his counsel was not a qualified interpreter.

{¶ 10} Evid.R. 604 states that "[a]n interpreter is subject to the provisions of these rules relating to the qualification as an expert and the administration of an oath or affirmation that he will make a true translation." Although Evid.R. 604 provides that "an interpreter be administered an oath or affirmation that she will make a true translation[,] * * * [t]he primary concern regarding a 'functionary' such as an interpreter is one of qualification[s], not veracity or fidelity." *State v. Ruiz* (Mar. 16, 1994), 9th Dist. No. 16063, 1994 WL 78620. See *United States v. Perez* (C.A.5, 1981), 651 F.2d 268, 273. In this case, Razo's second counsel was not sworn in; however, Razo failed to alert the court of this failure. Consequently, Razo's failure to alert the court of this failure constitutes a waiver of this issue on appeal. See *State v. Mejia* (Sept. 3, 1998), 8th Dist. No. 72716, 1998 WL 564039 (finding the appellant's failure to object to the trial court's failure to administer the oath to the interpreter precluded the appellant from assigning error in that regard).

{¶ 11} Obviously, Razo's second counsel was an officer of the court and had all the obligations attendant thereto. Moreover, Razo has not demonstrated that his counsel was not properly qualified or that he lacked veracity or fidelity. See *Ruiz*, supra; *Duran–Nina*, supra. In fact, at one point during the plea hearing, the trial court asked Razo whether he was "satisfied with [the] translation," and Razo replied, "Yes." It would indeed be a foolish result for a trial court to find that a qualified attorney, expert in a foreign tongue, would not guarantee due process better than an interpreter ignorant of the law. That would be the triumph of form over substance.

{¶ 12} Based on the record in this case, we cannot say that the trial court abused its discretion by failing to appoint an independent interpreter. Therefore, we do not find that Razo's constitutional rights were violated. However, we do find that the trial court complied with the requirements of Crim.R. 11(C) before it accepted Razo's plea, and that his plea was entered knowingly, intelligently, and

voluntarily. Accordingly, Razo's first and second assignments of error are overruled.

## III

{¶ 13} Razo's assignments of error are overruled. The judgment in the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

BAIRD, J., concurs.

CARR, P.J., concurs in judgment only.

CARR, Presiding Judge, concurring in judgment only.

{¶ 14} Although I concur in judgment that appellant has waived the issues on appeal by his counsel's failure to object to the qualifications of the interpreter and the trial court's failure to swear in the interpreter, I do not agree with the original analysis and feel compelled to write separately due to the serious nature of the issue presented by this case.

{¶ 15} "Where a criminal defendant does not speak English, constitutional guarantees of due process and equal protection require that the criminal defendant hears the proceedings in a language that he understands." *State v. Boshko* (2000), 139 Ohio App.3d 827, 833, 745 N.E.2d 1111, citing *State v. Pina* (1975), 49 Ohio App.2d 394, 400–401, 3 O.O.3d 457, 361 N.E.2d 262.

{¶ 16} Although the United States Supreme Court and the Supreme Court of Ohio have not specifically ruled on the constitutional right to a court interpreter, it has been widely accepted by federal and state appellate courts for over 30 years.

{¶ 17} As stated in the landmark case of *Negron v. New York* (C.A.2, 1970), 434 F.2d 386:

"the Second Circuit held that failure to *sua sponte* appoint an interpreter for an indigent twenty-three year old Puerto Rican immigrant charged with murder who neither spoke nor understood any English violated the petitioner's right of confrontation, right to consult with his lawyer with a reasonable degree of rational understanding, right to be meaningfully present at his own trial, and right to intelligently participate in his own defense, citing United States Supreme Court precedent in all of these areas. * * * The Second Circuit also found support for its ruling in United States Supreme Court competency law, e.g., *Pate v. Robinson*, 383 U.S. 375, 384, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). The court found that an inability to speak and understand English rendered the defendant as unable to participate intelligently in his own defense as any

mental disorder, yet this language-based 'disability' was readily 'curable' through provision of an interpreter." *Gonzalez v. Phillips* (E.D.Mich.2001), 147 F.Supp.2d 791, 799–800.

{¶ 18} Eight years after the *Negron* case, Congress enacted the Court Interpreters Act ("CIA"), Sections 1827 and 1828, Title 28, U.S.Code, which set out the right to a court interpreter.

{¶ 19} Section 1827, Title 28, U.S.Code provides:

"(d)(1) The presiding judicial officer, * * * shall utilize the services of the most available certified interpreter, or when no certified interpreter is reasonably available, as determined by the presiding judicial officer, the services of an otherwise competent interpreter, in judicial proceedings instituted by the United States, if the presiding judgment officer determines on such officer's own motion or on the motion of a party that such party (including a defendant in a criminal case), or a witness who may present testimony in such judicial proceedings—

"(A) speaks only or primarily a language other than the English language; or

"(B) suffers from a hearing impairment (whether or not suffering also from a speech impairment)

"so as to inhibit such party's comprehension of the proceedings or communication with counsel or the presiding judicial officer, or so as to inhibit such witness' comprehension of questions and the presentation of such testimony."

{¶ 20} Some of the specific requirements under this Act are that a waiver of an interpreter must be expressly made on the record after consultation with an attorney and with the assistance of a certified interpreter, and that interpretation shall be in simultaneous mode for any party. Sections 1827(f)(1) and 1827(g), Title 28, U.S.Code.

"One of the purposes of the CIA is 'to ensure that the defendant can comprehend the proceedings and communicate effectively with counsel' through the appointment of a certified interpreter. *United States v. Febus* (218 F.3d 784, 791 (7th Cir.2000)). However, the CIA was not enacted to 'create new constitutional rights for defendants or expand existing constitutional safeguards'; rather, the CIA was enacted 'to mandate the appointment of interpreters under certain conditions and to establish statutory guidance for the use of translators in order to ensure that the quality of the translation does not fall below a constitutionally permissible threshold.' *United States v. Joshi,* 896 F.2d 1303, 1309 (11th Cir.1990) (citing H.R.Rep. No. 1687, 95th Cong., 2d Sess. at 2–4 (1978), reprinted in, 1978 U.S.Code Cong. & Admin. News 4652, 4652–54). We afford district judges wide discretion in assuring that the CIA's

purposes are realized in their courtrooms. See *Febus,* 218 F.3d at 791–92." *United States v. Johnson* (C.A.7, 2001), 248 F.3d 655.

{¶ 21} In Ohio, R.C. 2311.14 establishes the right to a court-appointed interpreter and case law has confirmed that right. R.C. 2311.14 and *State v. Pina,* supra.

{¶ 22} Specifically, R.C. 2311.14 provides for appointment of an interpreter if a party cannot readily understand the proceedings:

"(A) Whenever because of a hearing, speech, or other impairment a party to or witness in a legal proceeding cannot readily understand or communicate, the court shall appoint a qualified interpreter to assist such person.

"(B) Before entering upon his duties, the interpreter shall take an oath that he will make a true interpretation of the proceedings to the party or witness, and that he will truly repeat the statements made by such party or witness to the court, to the best of his ability.

"(C) The court shall determine a reasonable fee for all such interpreter service which shall be paid out of the same funds as witness fees."

{¶ 23} Moreover, Evid.R. 604 provides that the provision of the rules relating to qualification of an expert are applicable to interpreters.

{¶ 24} In the case at bar, there are numerous problems. First, the court never specifically determined whether appellant could adequately speak and understand English. Although appellant's counsel indicated to the court that Spanish was appellant's first language and that appellant could not sufficiently understand English well enough to participate in the court proceedings, the court did not inquire further by voir diring appellant regarding his ability to comprehend. Instead, the court merely challenged his ability to comprehend by indicating that deputies could be brought in to testify that appellant spoke in English at the jail. To determine whether appellant had a sufficient command of the English language to allow him to participate in the proceedings without an interpreter, the trial court should have inquired of appellant via open-ended questions relating to such areas as his place of birth, employment and educational history, family composition, and any other area relevant to his ability to comprehend. Without further inquiry, though, the court indicated that appellant's second counsel who was bilingual could help appellant with any language difficulties if the need arose.

{¶ 25} As part of the plea hearing, it was noted that appellant did not attend school either in Mexico or the United States and does not read or write English. Despite this lack of schooling and inability to read or write English, no further inquiry was made as to appellant's ability to comprehend spoken or written English.

{¶ 26} In addition, despite the court's lack of inquiry into appellant's language abilities, the court appointed a bilingual attorney to assist appellant "for the purpose of whatever explanation may be appropriate." The attorney's qualifications were not examined by the court, and he was not sworn in as an interpreter as required by Evid.R. 604 and R.C. 2311.14. Interpretation was not done in a simultaneous mode after each question or statement was made. In fact, it is unclear from the record what type of interpretation, at all, was employed.

{¶ 27} Although I agree in the present case that appellant has waived his right to complain of the inadequacies of the interpreter issues, nonetheless, due process mandates that such issues be addressed in the future. For the foregoing reasons, I concur in judgment only.